IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ) ) JACKIE LLOYD HOLDER, JR. ) ) | CASE NO. 05-83014-G3-7 |
| JACKIE LLOYD HOLDER, JR., ) ) Plaintiff ) ) vs. ) ) TEXAS DEPARTMENT OF PUBLIC ) SAFETY, and THOMAS A. DAVIS, ) JR., in his Official Capacity ) as Director of the Texas ) Department of Public Safety, ) ) Defendants ) | ADVERSARY NO. 06-8003 |

MEMORANDUM OPINION

Came on for consideration the Defendants' Motion for Partial Summary Judgment on Nondischargeability (Docket No. 20) filed by Texas Department of Public Safety, and Thomas A. Davis, Jr., in his Official Capacity as Director of the Texas Department of Public Safety (collectively "DPS") and the "Plaintiff's (Debtor) Motion for Summary Judgment" (Docket No. 21) filed by Jackie Lloyd Holder, Jr., Debtor.  After review of the motions, responses thereto, affidavits in support, and the argument of counsel, the court will enter a separate Judgment declaring that the sum of $5,960 is nondischargeable pursuant to 11 U.S.C. § 523(a)(7).  To the extent any of the Findings of Fact may be

considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law may be considered Findings of Fact, they are adopted as such.

Debtor filed a voluntary chapter 13 petition on October 13, 2005 which was converted to a chapter 7 proceeding on November 15, 2005.  Debtor scheduled DPS as a general unsecured creditor with a claim for surcharges levied pursuant to the Texas Transportation Code.  The surcharges are imposed on persons convicted of traffic law violations.  Tex. Transp. Code §§ 708.102 and 708.103.  In the instant case, the parties stipulated that total surcharges, in the amount of $5,960, net of collection costs, were levied against Debtor for convictions for driving while intoxicated, for second convictions occurring within 36 months, convictions for failure to maintain financial responsibility, and convictions for driving with an invalid license.  Amended Stipulation of Facts, Docket No. 30.  Failure to pay these surcharges can result in the suspension of a driver's license.  Tex. Transp. Code § 708.152.

Debtor filed the instant adversary proceeding and requests that the court declare the surcharges (including interest, collection costs, and fees) dischargeable.  Debtor contends that DPS violated the automatic stay by attempting to collect the surcharges.  Debtor also alleges that DPS is withholding the reinstatement of his driver's license for failure

to pay the surcharges and that DPS should be enjoined from withholding the reinstatement.

DPS contends that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(7) and denies violating the automatic stay. The parties filed the instant cross motions for summary judgment. DPS submitted affidavits and exhibits in support of its motion for summary judgment. Debtor did not file any affidavits in support but did file exhibits.

Summary Judgment is appropriate where the court, viewing evidence in the light most favorable to the non-moving party, finds that there is no genuine issue of material fact and it should be granted as a matter of law. F.R.C.P. 56(c). The purpose of summary judgment is to "pierce the pleadings" and to assess the proof in order to see whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). These standards apply equally in bankruptcy cases. *United States v. Kolstad (In re Kolstad)*, 101 B.R. 492, 493 (Bankr. S.D. Tex. 1989).

Section 523(a)(7) provides that a claim is nondischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Section 101 of the Bankruptcy Code does not define the terms "fine, penalty, or forfeiture." Surcharges imposed for convictions of traffic law violations have uniformly been found to be fines and penalties. *See In re Curtin*, 206 B.R. 694 (Bankr. N.J. 1996); *In re Kent*, 190 B. R. 196 (Bankr. N. J. 1995); and *In re Kish*, 238 B.R. 271 (Bankr. N. J. 1999).

Section 101(27) of the Bankruptcy Code defines "governmental unit" to include a department or agency of the United States or a State. Surcharges collected by the state of Texas are payable to the Department of Public Safety by and through its contractor, Municipal Services Bureau. Those monies are remitted on behalf of DPS to the Comptroller on the first Monday of each month. Tex. Transp. Code § 708.156; Tex. Health & Safety Code § 780.002(a). The court finds that DPS and the Comptroller of Public Accounts are governmental units under section 523(a)(7).

The Comptroller deposits 49.5% of the surcharge monies received into the general revenue fund. Tex. Health & Safety Code § 780.002(b). Another 49.5% of the money received is

4

deposited into an account called the "Trauma Fund."  Tex. Health & Safety Code §§ 780.002(b) and 780.003.  The remaining 1% is used to offset DPS's expenses incurred in administering the Driver Responsibility Program and DPS concedes that this is dischargeable as it is compensation for actual pecuniary loss.

Debtor claims that the 49.5% of the surcharge monies deposited in the general revenue fund are not for the benefit of a governmental unit because it is possible that some of those monies would end up being deposited into the "Texas Mobility Fund."[1]  When traffic fines collected by the state are added to the 49.5% of surcharges collected by DPS, any amount in excess of $250 million, collected in a given year, is deposited in the Texas Mobility Fund.  Tex. Transp. Code § 780.002(c).  Debtor contends that although the Texas Mobility Fund appears to be primarily intended to fund publicly owned highways, there is no prohibition on the use for privately owned public transportation projects.

Debtor's argument is weak.  The maintenance of public highways and use of monies to fund public transportation projects is of benefit to the state and its citizens.  *See In re Hewitt*,

---

[1] The Texas Mobility Fund was created in the state treasury and is a revolving fund to provide a method of financing the construction, reconstruction, acquisition and expansion of state highways.  Money in the fund may also be used to provide participation by the state in payment of portions of the costs of constructing and providing publicly owned toll roads and other public transportation projects.  Texas Constitution, Article III, Section 49-k (2001).

311 B.R. 415 (E.D. Pa. 2004)(Collection of money by the state for payment to a harmed individual found to be nondischargeable because the government benefitted from the deterrent effect resulting from the imposition of the restitution obligation.)

In addition, collection of the surcharges has never historically exceeded $250 million per year and thus, no surcharge monies have been deposited into the Texas Mobility Fund to date.  Affidavit of Karen Campbell, Appropriations Control Officer, Fund Accounting, Texas Comptroller of Public Accounts, Exhibit No. 1, Defendant's Motion for Partial Summary Judgment on Nondischargeabilty, Docket No. 20.  The court finds that monies paid into the general revenue fund are for the benefit of the state, which is a governmental unit, and are not paid to the Department of Public Safety or the Comptroller for any "actual pecuniary loss" incurred.  Thus, the court finds that these monies are nondischargeable.

The other 49.5% of the surcharge monies are deposited in the Trauma Fund, which is a dedicated account within the general revenue fund maintained by the Texas Comptroller.  Monies in the Trauma Fund may be used to fund designated trauma facilities, county and regional emergency medical services, and trauma care systems.  Tex. Health & Safety Code § 780.004.  These monies are to reimburse providers of emergency medical and trauma care.  DPS contends that this fund provides a benefit to the

state as it furthers the state's interests on behalf of the citizens of Texas for sustainable, continuing health care, including reimbursement to facilities that provide emergency medical care.  This court agrees.

The Trauma Fund is designed to compensate trauma centers, and local governments that reimburse trauma centers, for the trauma cases that drivers such as Debtor tend to cause. Section 780.004(b) of the Texas Health and Safety Code states that the money is to be used to fund a portion of the uncompensated trauma care provided in the state.  Funds disbursed to eligible facilities are based on a proportionate share of uncompensated trauma care provided in the state.  The possibility that some of the funds disbursed may ultimately be paid to private facilities is not determinative that the payment of the surcharges are not for the benefit of the state.

Payments made from the Trauma Fund benefit the state by furthering its interests in the health and safety of its citizens.  These payments help to ensure that the citizens of Texas are provided with continued emergency medical and trauma care.  The court finds that the Trauma Fund provides a benefit to the state as it reimburses certain facilities for a portion of the uncompensated services provided to trauma patients.  The court finds that the monies paid into the Trauma Fund are paid to and for the benefit of a governmental unit.  As such, the court

finds that these monies are nondischargeable.

Debtor contends that DPS violated the automatic stay by withholding the reinstatement of Debtor's driver's license. Debtor contends that reinstatement is being withheld on the bases that he has not paid the levied surcharges and has not paid a civil judgment or posted security for the judgment.  Section 362(h)[2] provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  Pursuant to this section, Debtor requests the court to award him attorney's fees and costs in connection with the prosecution of this adversary proceeding.

Debtor's driver's license currently is suspended as a result of a criminal court order.  Debtor's driver's license was suspended continuously from October 14, 2003 through the petition date, October 13, 2005 (with the exception of the time from October 8, 2004 and November 29, 2004).  Since filing for bankruptcy, Debtor's driver's license has been suspended continuously and will be through March 2007.  These suspensions were the result of the Debtor's convictions for driving while

---

[2] The instant case was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), October 17, 2005.  Although the pre-amendment statute is applicable, there have been no substantive changes for the purposes of this discussion.  Pre-amendment subsection 362(h) was redesignated as subsection 362(k)(1) in the BAPCPA.

intoxicated, for a second driving while intoxicated conviction occurring within 36 months of the first, driving without liability insurance, driving with an invalid license, and driving with a suspended license.  The suspensions of Debtor's license are unrelated to his failure to pay pre or post petition surcharges owed to DPS.  Affidavit of Sherrie Zgabay, Manager of the Driver Improvement Bureau of the Texas Department of Public Safety, Docket No. 24.

      Debtor contends the automatic stay was violated by DPS as a result of DPS's attempt to collect the surcharges post-petition.  The court takes judicial notice of the fact that after conversion to chapter 7, the Notice of Creditors' Meeting was mailed December 2, 2005.  Main Case Docket No. 10.  DPS received the notice December 5, 2005.  Exhibit No. 10, Plaintiff's Motion for Summary Judgment, Docket No. 21.  Thereafter, DPS sent Debtor a one page form letter dated December 20, 2005, referencing correspondence from Debtor, citing the requirements for reinstatement of Debtor's driver's license and indicating that DPS "is unable to accept a meeting of creditors as compliance." Exhibit No. 1, Plaintiff's Motion for Summary Judgment, Docket No. 21.  DPS sent Debtor another one page form letter dated March 30, 2006, notifying him that additional filings were required in order to reinstate his license.  This correspondence also stated that "[p]artial compliance [had] been received regarding the

status of [Debtor's] driver record."  Exhibit No. 3, Plaintiff's Motion for Summary Judgment, Docket No. 21.

The above referenced letters from the DPS appear to be in response to inquiries from the Debtor in connection with reinstating his license.  The surcharges and payment thereof are referenced in the letters; however, the content of these letters is mostly informational as to the requirements to have a driver's license reinstated.  DPS outsources its automated billing process, and as a result of the safeguards in the system designed to prevent fraud, it is virtually impossible to override the automatic generation of notices that surcharges have been levied.  Affidavit of Sherrie Zgabay, Manager of the Driver Improvement Bureau of the Texas Department of Public Safety, Docket No. 24.  The court finds that the DPS has not wilfully violated the automatic stay.

Debtor also contends that DPS's requirement that Debtor post security is a violation of the automatic stay.  An uninsured motorist who is or is likely to be held liable for damages to another resulting from an automobile accident must post security in an amount sufficient to pay the anticipated amount of a judgment for damages resulting from the accident.  This financial assurance is designed to ensure that persons who suffer a loss in an automobile accident where Debtor, as an uninsured motorist, was at fault, would be made whole.

According to the collection practices of DPS, in the event a judgment is rendered in favor of a party and that party participates in Debtor's bankruptcy, posting security is not required.  DPS no longer seeks security based on the allegations of the Debtor in his pleadings in the instant case.  Debtor stated that a judgment was obtained against him as a result of an automobile accident and that this claim was being addressed in Debtor's main case bankruptcy proceeding.  Affidavit of Sherrie Zgabay, Docket No. 24.  The court finds there was no wilful violation of the automatic stay by DPS.  The court finds that the actions of DPS in requesting Debtor to provide security was not to collect on a debt.  The court finds any actions of the DPS which might be considered violation of the stay were inadvertent.  The court finds that DPS was providing information to Debtor of its requirements and policies regarding reinstatement.  Debtor's request for damages, fees and costs are denied.

The parties stipulated that the total net amount of the surcharges in controversy is $5,960.  This amount reflects the deductions of the 1% statutory reimbursement from the surcharge as well as 4% which represents collection costs.  The court finds that the amount of $5,960 owed by Debtor to DPS is nondischargeable.

Based upon these findings of fact and conclusions of law, the court will enter a separate Judgment in conjunction therewith.

Signed at Houston, Texas on this 1st day of December, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE